IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| JANELLE M. FREEMAN, | ) | Civil No. 3:11-cv-00401-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

        Lisa R. J. Porter
        KP Law LLC
        16200 SW Pacific Highway
        Suite H-280
        Portland, OR 97224

                Attorney for Plaintiff


        S. Amanda Marshall, U.S. Attorney
        Adrian L. Brown, Asst. U.S. Attorney
        1000 S.W. 3rd Avenue, Suite 600
        Portland, OR 97204-2902


FINDINGS AND RECOMMENDATION - 1

Benjamin Groebner
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900, M/S 221A
Seattle, WA 98104

       Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Janelle Freeman brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security (the Commissioner)

denying her applications for Disability Insurance Benefits (DIB) and Supplemental Security

Income (SSI) pursuant to 42 U.S.C. §§ 401-34 and 1381-1383f.

For the reasons set out below, the Commissioner's decision should be affirmed.


**Procedural Background**

Plaintiff filed applications for DIB and SSI on September 21, 2006, alleging that she had

been disabled since June 15, 2003, because of arthritis, fibromyalgia, diabetes, neuropathy,

asthma, attention deficit disorder, a learning disorder, and anxiety.  After her applications had

been denied initially and upon reconsideration, she timely requested a hearing before an

Administrative Law Judge (ALJ).

A hearing was held before ALJ Riley Atkins on July 30, 2009.  Plaintiff, Plaintiff's sister,

and a Vocational Expert (VE) testified.

In a decision filed on August 11, 2009, ALJ Atkins found that Plaintiff was not disabled

within the meaning of the Social Security Act (the Act).  That decision became the final decision

of the Commissioner on February 4, 2011, when the Appeals Council denied Plaintiff's request

for review.  Plaintiff now seeks a Judgment reversing that decision and remanding the action to

FINDINGS AND RECOMMENDATION - 2

the Social Security Administration (the Agency) for an award of benefits.  In the alternative, she

asks that the action be remanded for further proceedings.


## Background

Plaintiff was born on January 18, 1958, and was 51 years old at the time of the hearing

before the ALJ.  She graduated from high school and attended a community college for two

years.  Plaintiff has past relevant work experience as an automobile detailer, a retail sales

attendant, a security monitor, and a telemarketer.


## Disability Analysis

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is

disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary

of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir.

1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial

gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is

not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's

case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe

impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant

has a severe impairment, the Commissioner proceeds to evaluate the claimant's case under Step

Three.  20 C.F.R. § 404.1520(c).

FINDINGS AND RECOMMENDATION - 3

<u>Step Three</u>.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the presumptively disabling impairments listed in the Social Security Administration (SSA) regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal an impairment listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four. 20 C.F.R. § 404.1520(d).

<u>Step Four</u>.  The Commissioner determines whether the  claimant is able to perform relevant  work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

<u>Step Five</u>.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant.  <u>Tackett</u>, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  <u>Id</u>.

**<u>Medical Record</u>**

In their respective memoranda, the parties have addressed the relevant portions of Plaintiff's medical record only in their discussion of issues raised by Plaintiff, and have not summarized the entire medical record.  I will do likewise in this Findings and Recommendation.

**<u>Hearing Testimony</u>**

**<u>Plaintiff</u>**

Plaintiff testified as follows at the hearing before the ALJ.

Because she is dyslexic, Plaintiff has problems reading and sometimes reads and writes things backwards.  Plaintiff attended special education classes in high school, and has completed about 1 and ½ years of credits at a community college.  Plaintiff started attending college in 2004, and worked toward a certification as a drug and alcohol counselor. She typically carried about 12 credit hours per quarter, and discontinued her studies in 2008.  She did "okay" in some classes, and "not so good" in others.  She struggled in school, dropped out several times because of health problems, and did not receive a certificate of completion.  Her arthritis caused a lot of problems with sitting, standing, and walking around campus.  Plaintiff has COPD, and it has caused her many health problems.   She smoked about a pack of cigarettes per day and had tried to quit many times but had been unable to do so because she had smoked for 40 years and was addicted.

FINDINGS AND RECOMMENDATION - 5

Plaintiff worked for many years as a CNA, and last worked in that position in 1987. In her last job, which ended in 2008, she worked part-time in a "crowd control" security position. She could not have done that work full time because it required her to be on her feet and walk for extended periods.

Plaintiff had been using a walker since the previous February. No doctor had told her to use a walker, but she had decided to start using it because she "could barely get around." She unsuccessfully applied for Disability Insurance Benefits in 2004 because of chronic pain she experienced in her legs and feet. The pain was caused by neuropathy related to her diabetes. Plaintiff also had rheumatoid arthritis, osteoarthritis, and fibromyalgia, and these also caused serious chronic pain. At the time of the hearing, Plaintiff was taking Metformin, Novlin 70/30, and Novlin R for diabetes. She had taken Lantus and Novotin before, but Dr. Martinez, whom she had seen only once, had switched her medications because these were very expensive.

Plaintiff had surgery for diverticulitis in April, 2007, after suffering severe pain for more than a year because of that disease. At the time of the hearing, diverticulitis did not cause significant problems unless she ate the "wrong stuff" and had a flare up. Plaintiff was not taking medication for arthritis or fibromyalgia. She was using inhalers for her asthma.

OHSU treated Plaintiff as a charity patient from 2006 through January, 2009, when she was discharged from care after a dispute concerning her requests for narcotic pain medication. Plaintiff had been taken off narcotic pain medication because a test showed the presence of "Benzos"[1] in her blood. This occurred because Plaintiff had taken medication prescribed for her mother. This happened at a very stressful time: Plaintiff's mother had just died, and her father

---

[1]Plaintiff was referring to benzodiazepines, found in lazorepam, a controlled substance that was not prescribed for Plaintiff.

FINDINGS AND RECOMMENDATION - 6

had died only five weeks earlier.  During her last visit to an OHSU doctor, Plaintiff was accompanied by her sister and her 8 year old grandson.  Dr. Brady and the grandson argued about Dr. Brady's refusal to prescribe narcotic pain medication for Plaintiff.  After Dr. Brady had left the room and not returned for 15 minutes, Plaintiff went to the patient advocate office and filed a complaint.  Approximately one month later she received a letter stating that OHSU would no longer treat her.  This resulted in deprivation of all her medications, including her diabetes medication.  Plaintiff was angry because Dr. Brady had not listened to her or understood the need to obtain relief from her severe pain.  Plaintiff had complied with "all the alternative stuff" that Dr. Brady had wanted her to do, but had not been able to stop smoking.  She had Chantix, but it was in storage.

Plaintiff's last significant employment had been with Fred Meyer, where she had worked as a cashier and in sales in the Garden Center.  Before that, she had worked as a driver for Radiosys and Pony Express.  She had also worked as an assembler and as a flagger.  All of her previous work had required her to be on her feet at least part of the time.

Plaintiff could walk for a block and stand for perhaps 10 minutes before her back and left leg "started to give out on" her.  Plaintiff thought that she might be able to stand for four hours and sit for two hours during an eight hour work day.  She needed to lie down two or three hours a day.  Plaintiff could not lift 10 pounds during 2/3 of a workday.

Plaintiff had severe depression and "post traumatic stress syndrome" from the deaths of her son and two grandsons.  These losses made Plaintiff angry, and she was angry at herself for her inability to "function right."  Life was unfair.  Plaintiff did not want to be around other people, and often did not want to get up or leave the house.  She had developed severe anxiety during the last few months before the hearing, and had experienced panic attacks.  Plaintiff was

FINDINGS AND RECOMMENDATION - 7

not seeing a counselor for her mental impairments.  She had previously taken antidepressant medication prescribed by Dr. Brady, but was not taking this medication at the time of the hearing.

Plaintiff had lived in a mobile home with her mother and father before they died.  At the time of the hearing, she lived with her sister.  She was trying to sell the home that her parents had owned, and was then owned by Plaintiff and her siblings.  Plaintiff had supported herself with financial aid while attending college.  Before leaving Fred Meyer's employment, she "was off on Workman's comp for over a year," and then declined a 12 hour per week gas station  job Fred Meyer offered her because the position did not provide medical benefits and she would have lost her medical benefits if she had taken the position.   Before she worked for Fred Meyer, Plaintiff had lost her job as a driver because she had an accident: The insurance company would not cover her, and her boss "got himself in a little trouble" because he was trying to pay the drivers "under the table" and not withholding payroll taxes.

Plaintiff had osteoarthritis and her hands and the joints in her fingers went numb.  Plaintiff had had this impairment, which came and went,  for five years before the hearing.

**Sherry Lynn Benedict-Haggard**

Sherry Lynn Benedict-Haggard, Plaintiff's sister, testified as follows at the hearing.

Plaintiff's diabetes has "gotten pretty severe over the years."  She has severe neuropathy in her feet, and like Ms. Benedict-Haggard and her other two siblings, has crippling rheumatoid and osteoarthritis.  Plaintiff has fibromyalgia and restless leg syndrome, and has suffered depression since losing her son and grandsons.  Plaintiff has had panic attacks, one of which Ms. Benedict-Haggard witnessed in 2000 or 2001.

Plaintiff could not work because pain and back problems made it difficult for her to

FINDINGS AND RECOMMENDATION - 8

stand, walk, and sit for any length of time.  Neuropathy, fibromyalgia, and restless leg syndrome would prevent Plaintiff working in a position that required her to stand most of the day.  Plaintiff had been treated unfairly because arthritis and fibromyalgia run in her family.  It had taken doctors two years to get Plaintiff's pain under control, and she had not received the care she needed.  Plaintiff would like to work because she had always worked, is a "people person" and likes to be around others.  Plaintiff was in pain "day in and day out," and Ms. Benedict-Haggard heard her moaning and groaning, especially at night.

Ms. Benedict-Haggard and Plaintiff applied for disability benefits at the same time.  Ms. Benedict-Haggard received benefits, and Plaintiff did not.

**VE Nancy Brown**

Nancy Brown, a VE, testified that Plaintiff's past relevant work included auto detailing, retail sales attendant, security, and telemarketing jobs.

The ALJ asked the VE to consider a hypothetical claimant who had the residual functional capacity set out in Exhibit F-15, and was limited to routine, unskilled work that required little public contact and was performed in an environment that did not require concentrated exposure to environmental irritants including dust, fumes, and smoke.  The VE testified that the hypothetical claimant could not perform Plaintiff's past relevant work, but could work as a small products assembler, an electronics worker, or an office helper.

In response to a modified vocational hypothetical, the VE testified that a 2 hour limit on standing and walking would eliminate the office helper position.  She further testified that two or more unpredictable absences per month would preclude competitive employment.

**ALJ's Decision**

At the first step of his disability analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 15, 2003, the alleged date of the onset of Plaintiff's disability.

At the second step, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease, diabetes mellitus with neuropathy, fibromyalgia, chronic obstructive airway disease, attention deficit hyperactivity disorder/learning disability, polysubstance abuse in remission, major depressive disorder, and obesity.

At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment set out in the listings, 20 C.F.R. Part 404, Subpart P., App.1.

The ALJ next evaluated Plaintiff's residual functional capacity (RFC).  He concluded that Plaintiff could perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations: Plaintiff was limited to occasional climbing, balancing, stooping, kneeling, crouching, and crawling; could not stand/walk more than two hours during a workday; should avoid concentrated exposure to environmental irritants, and was limited to routine, unskilled work that required little public contact.  The ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible to the extent that they were inconsistent with this RFC assessment.

At the fourth step of his disability analysis, the ALJ found that Plaintiff could not perform her past work as a car detailer, retail sales person, warehouse worker, driver, security worker, or telemarketer.

FINDINGS AND RECOMMENDATION - 10

Based upon the testimony of the VE, at the fifth step, the ALJ found that Plaintiff could perform other work that exists in significant numbers in the national economy.  He cited small products assembler and electronics worker positions as examples of such work.

Based upon his conclusion that Plaintiff could perform such work, the ALJ found that Plaintiff was not disabled within the meaning of the Act.

**Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Claimants bear the initial burden of establishing disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The Commissioner bears the burden of developing the record,  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991), and bears the burden of establishing that a claimant can perform "other work" at Step Five of the disability analysis process.  Tackett, 180 F.3d at 1098.

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.  42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Andrews, 53 F.3d at 1039.  The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir.

1986).  The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation."  Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends that the ALJ erred in finding that she was not wholly credible, failed to adequately develop the record concerning her mental and physical impairments, erred in concluding that her impairments did not meet or equal a presumptively disabling listed impairment, failed to adequately consider the effects of her obesity, improperly rejected evidence provided by her sister and her  mother, failed to properly evaluate her RFC, and failed to pose a vocational hypothetical that set out all of her limitations.

1. **ALJ's Credibility Determination**

As noted above, the ALJ found that Plaintiff's testimony concerning the intensity, persistence, and limiting effects of her symptoms was not credible to the extent that it was inconsistent with his assessment of her functional capacity.  Plaintiff contends that the ALJ failed to properly evaluate her credibility, and erred in concluding that she was not wholly credible.

**Evaluating credibility**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  If a claimant produces medical evidence of an underlying impairment that is reasonably expected to produce some degree of the symptoms alleged, and there is no affirmative evidence of malingering, an ALJ must provide "clear and convincing reasons" for an adverse credibility determination.  Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Gregor v. Barnhart, 464

F.3d 968, 972 (9th Cir. 2006).  If substantial evidence supports the ALJ's credibility

determination, that determination must be upheld, even if some of the reasons cited by the ALJ

are not correct.  Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1162 (9th Cir.

2008).

        An ALJ must examine the entire record and consider several factors, including the

claimant's daily activities, medications taken and their effectiveness, treatment other than

medication, measures other than treatment used to relieve pain or other symptoms, and "any

other factors concerning the individual's functional limitations and restrictions due to pain or

other symptoms."  SSR 96-7.

**Analysis**

        Here,  Plaintiff produced evidence of underlying impairments that could be reasonably

expected to cause some degree of the symptoms alleged and there was no evidence of

malingering.  Therefore, the ALJ was required to provide clear and convincing reasons for

concluding that she was not wholly credible.

        In support of his credibility determination, the ALJ cited inconsistencies between

Plaintiff's activities and the degree of limitation that she alleged.  The ALJ observed that, though

her impairments did cause some limitations, Plaintiff's "active lifestyle" was inconsistent with

the degree of limitation she alleged.  He noted that Plaintiff had attended college as a full time

student until April, 2008, and had "worked on and off providing security until September, 2008."

The ALJ further noted that Plaintiff cared for her sister when she was recovering from surgery,

and cared for her dying mother.  He noted that the walker that Plaintiff used had not been

prescribed, and concluded that there was "no evidence that it was a medical necessity."  The ALJ

added that, though Plaintiff might lie down during the day, there was no evidence that this was a "medical necessity" either.

The ALJ also cited Plaintiff's "drug-seeking behavior" as evidence that Plaintiff was not wholly credible. He noted that Plaintiff demanded more pain medications than her physicians thought was appropriate, repeatedly sought narcotic medication against the advice of her physicians, tested positive for medication that had not been prescribed for her, requested narcotics from a pharmacy after her doctor had denied her request for such medication, yelled at a physician who had denied her request for a prescription for narcotics, and was ultimately discharged from care because of such conduct.

These are adequate reasons for discounting Plaintiff's credibility. The consistency of a claimant's statements concerning her limitations with other evidence in the record is a significant indicator of credibility, SSR 96-7p, 1996 WL374186 at *5, and in evaluating credibility, an ALJ may consider whether a claimant's statements about alleged limitations are consistent with her activities. Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007).[2]  The ALJ's conclusion that Plaintiff's allegations were inconsistent with the record of her activities was supported by substantial evidence in the record. Plaintiff attended school full-time until April, 2008, was able to work part time in a security position requiring her to be on her feet for sustained periods of time until September 2008, and cared for ailing family members in 2005 and 2008. The ALJ's conclusion that Plaintiff's allegations concerning her limitations during that time were inconsistent with her activities was reasonable, and was supported by substantial evidence in the

---

[2]As to the credibility issue, the question is not whether the claimant's activities demonstrate the capacity to perform sustained work activity, but whether they are inconsistent with the claimant's allegations.  See, e.g., Valentine v. Commissioner, 574 F.3d 685, 692 (9th Cir. 2009).

record.  This inconsistency was a clear and convincing reason for concluding that Plaintiff was not wholly credible.

In evaluating a claimant's credibility, an ALJ may consider drug-seeking behavior. Edlund v. Massanari, 253 F.3d 1152, 1157-58 (9th Cir. 2001) (ALJ evaluating credibility could consider likelihood that claimant exaggerated symptoms in order to obtain prescription pain medications).  Here, the ALJ cited substantial evidence that Plaintiff sought, and continued to seek, narcotic medications which her doctors had told her were not appropriate.  Under these circumstances, and in light of Plaintiff's history of polysubstance abuse, the ALJ could reasonably conclude that Plaintiff's description of her symptoms was not wholly credible. Though Plaintiff offers other interpretations of the evidence the ALJ cited in support of his credibility determination, the ALJ's interpretation was reasonable and was supported by substantial evidence.  It therefore should not be set aside by this court.  See, e.g., Fair v. Bowen, 885 F.2d 587, 604 (9th Cir. 1989) (where evidence subject to multiple interpretations, court does not second guess ALJ's reasonable interpretation).

The ALJ satisfied his burden of providing clear and convincing reasons for concluding that Plaintiff's statements concerning her symptoms and limitations were not credible to the extent they were inconsistent with his RFC assessment.

## 2. **Development of the Record**

Plaintiff contends that the ALJ failed to adequately develop the record concerning her mental and physical impairments, and that he simply minimized and dismissed her learning disabilities, ADHD, sleep disorder, osteoarthritis, shoulder bursitis, hand pain, and restless leg syndrome.  She contends that the ALJ should have "ordered a consultative exam with a psychologist and physician to accurately assess [her] mental and physical functioning . . . ."

The ALJ has a duty to fully and fairly develop the record, and to ensure that a claimant's interests are considered.  Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001).  However, as the Commissioner correctly notes, an ALJ is required to further develop the record only if the existing evidence is ambiguous, or if the record is inadequate to allow for "proper examination of the evidence."  Id.  The ALJ can further develop the record, if necessary, by subpoenaing medical records or submitting questions to a claimant's doctors, continuing the hearing, or keeping the record open after a hearing to allow for supplementation of the record.  Id.  A consultative examination is required only if the medical and nonmedical record is not sufficient to support a decision or the record includes ambiguities that cannot be resolved based upon information in the records of a claimant's treatment sources.  Reed v. Massanari, 270 F.3d 838, 842 (9th Cir. 2001); 20 C.F.R.  §§ 404.1512(f), 416.912(f).

The Commissioner contends that the record here was "neither ambiguous nor inadequate for the ALJ to make a proper non-disability determination."  I agree.   The voluminous medical record before the ALJ included two psychological examinations and substantial evidence concerning the impairments which Plaintiff contends required further evaluation.  The ALJ's conclusion that a reasoned disability determination could be made based upon the existing record was reasonable, and was supported by the record.  Plaintiff has not shown that the ALJ erred in concluding that the evidence was sufficient to permit a reasoned decision, or that he erred in failing to further develop the record by providing for additional evaluations.

3. **Severe impairment analysis**

As noted above, the ALJ found that Plaintiff's attention deficit hyperactivity/learning disorder and major depressive disorder were severe impairments, and that Plaintiff did not have an impairment or combination of impairments that met or equaled one of the presumptively disabling impairments listed in the relevant regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Plaintiff contends that the ALJ erred in failing to list her PTSD, learning disorders, and anxiety disorders as "severe" impairments, and erred in concluding that her mental impairments did not meet or equal a listed impairment. In support of these contentions, she reiterates her assertion that the ALJ erred in failing to refer her for a psychological consultative examination. Plaintiff also contends that the ALJ erred in failing to consider her obesity in combination with her other impairments. She asserts that a consultative examiner could have addressed the relationship between her mental impairments and her obesity.

The "severity" analysis at step two of the disability determination process "is a de minimis screening device to dispose of groundless claims." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987); SSR 85-28; Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)). An ALJ can find that an impairment is 'not severe' only if the evidence establishes that it has "no more than a minimal effect on an individual's ability to work." Id.

The Listings describe impairments for each major body system which are severe enough to be *per se* disabling. Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1998). A claimant bears the burden of establishing that an impairment meets or equals an impairment in the Listings. Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).

Plaintiff's contention that the ALJ erred in failing to refer her for a consultative examinations is discussed above, and will not be addressed further here.  Her assertion that the ALJ failed to consider severe any of her mental  impairments other than her depressive disorder is inaccurate: The ALJ found that Plaintiff's attention deficit hyperactivity/learning disorder was also severe.  Moreover, the ALJ adequately reviewed and summarized the evidence concerning Plaintiff's other mental impairments, and his conclusion that they had no more than a minimal effect on her ability to work is supported by substantial evidence, including the results of psychological testing.

Plaintiff does not contend that her obesity met a listed impairment, and her conclusion that the ALJ failed to adequately consider whether obesity combined with other impairments equaled a listed impairment is not supported by a review of the record.  The ALJ here found that Plaintiff's obesity was a severe impairment, and accounted for functional limitations related to obesity in his assessment of her RFC.  Where a claimant has not presented  the ALJ a plausible theory as to how an impairment equals a listing, the ALJ is not required to provide an extensive discussion of equivalency.  See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001); Gonzalez v. Sullivan, 911 F.2d 1197, 1200-01 (9th Cir. 1990) (ALJ not required to include extensive analysis of listings where ALJ's thorough evaluation of evidence adequately supported his conclusions).  Plaintiff here did not identify a listing which her obesity met or equaled and did not present any evidence of functional limitations caused by obesity in combination with other impairments.  She has not shown that the ALJ erred in his consideration of her obesity.  See Burch, 400 F.3d at 682-83 (ALJ not required to discuss whether impairment meets or equals listing where claimant fails to identify listing met or equaled or to show evidence of relevant functional limitation).

Plaintiff has not shown that the ALJ erred in concluding that her mental impairments did not meet or equal a listed impairment.   As the Commissioner notes, the requirements of Listings 12.02 (Organic Mental Disorders), 12.04 (Affective Disorders), and 12.06 (Anxiety-Related Disorders) are satisfied if a claimant meets the requirements of Paragraphs A and B, or C.   See 20 C.F.R. pt. 404, subpt. P. App. 1, §§ 12.02, 12.04, 12.06.   Paragraph A requires medical findings that establish the existence of particular conditions, and Paragraph B requires that the relevant impairments result in two of the following: 1) marked restriction in activities of daily living; 2) marked difficulties maintaining social functioning; 3) marked difficulty maintaining concentration, persistence, or pace; or 4) repeated extended episodes of decompensation.   Id. The requirements of 12.02(C)  and 12.04(C) are satisfied if the claimant has a "[m]edically documented history of a chronic organic mental disorder [or affective disorder] that has lasted at least 2 years and has caused more than a minimal limitation in the ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support and either 1) repeated episodes of decompensation of extended duration; 2) a residual disease process that has resulted in such marginal adjustment that a minimal increase in mental demands or change in the environment would likely result in decompensation; or 3) a current history of 1 or more years of inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.   Id. at 12.02(C); 12.04(C).   Paragraph C of Listing 12.06 is satisfied only if the claimant has a "complete inability to function independently outside the area of one's home."   Id. at 12.06(C).

Plaintiff here does not argue that her mental impairments meet or equal the requirements of paragraphs A and B, but instead asserts that her need to structure her schedule to accommodate her stress level satisfies paragraph C.   However, she has not shown evidence of

repeated episodes of decompensation, shown that minimal increases in mental demands or

change in environment would cause decompensation, shown that she cannot function outside a

highly supportive living arrangement, or shown that she cannot function independently outside

her home.  Failing to do so, she has not shown that she has a mental impairment or combination

of impairments that meets or equals the Listings.

4. **ALJ's evaluation of statements of lay witnesses**

        As noted above, Plaintiff's sister testified that Plaintiff had difficulty walking or standing

for any period of time, has back pain when sitting, and is in pain "day in and day out."

Plaintiff's mother submitted a questionnaire stating that Plaintiff had problems lifting, bending,

standing, walking, sitting, reaching, climbing, and using her hands.  She also reported that

Plaintiff had problems with memory and concentration.

        The ALJ found that Plaintiff's sister's testimony was not entirely credible because it was

inconsistent with evidence of Plaintiff's work activity, because the witness did not have the

expertise required to evaluate whether Plaintiff's pain medications were appropriate, and because

the witness was financially supporting Plaintiff from the proceeds of her SSI payments, and had

an interest in Plaintiff's receipt of her own benefits.  He found that Plaintiff's mother was not

wholly credible because there was no evidence supporting her assertion that Plaintiff had

difficulty sitting or using her hands, and her statements were inconsistent with Plaintiff's ability

to attend school full-time and work on and off as a security guard.

        Plaintiff contends that the ALJ failed to adequately support his rejection of hearing

testimony of Plaintiff's sister and statements made by Plaintiff's mother in a written

questionnaire submitted to the Agency.   I disagree.  An ALJ must provide reasons that are

"germane" for discounting the testimony of lay witnesses.  Dodrill v. Shalala, 12 F.3d 915, 918-

19 (9th Cir. 1993).  Here, the ALJ provided such reasons.  Plaintiff's reliance on her sister for

material support is arguably irrelevant in assessing her sister's credibility: If financial interest

was enough to undermine credibility, all claimants might  be considered incredible because of

their stake in the outcome, and that is not the case.  Likewise, specialized medical knowledge

would not necessarily be required in order for Plaintiff's sister to credibly report her personal

observation that the medications prescribed did not relieve Plaintiff's pain.  Nevertheless the

ALJ's observation that Plaintiff's sister's testimony was inconsistent with some of Plaintiff's

activities was supported by the record, was germane, and provided an adequate basis for

discounting her credibility.  See, e.g., Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005)

(lay testimony inconsistent with claimant's activities may be rejected).  Similarly, the ALJ's

conclusion that Plaintiff's school and work activities were inconsistent with the degree of

impairment reported by Plaintiff's mother was supported by the record, and provided a germane

basis for discounting her statements as well.

5. **Assessment of Plaintiff's RFC**

Plaintiff contends that the ALJ erred in failing to assess and discuss whether she could

work on a "regular and continuous basis" for 8 hours a day, five days a week; finding that her

impairments in concentration were accommodated by "precluding skilled work;" and failing to

address all of the limitations identified by Plaintiff and the lay witnesses.  She argues that the

ALJ's RFC assessment is not supported by substantial evidence.

The ALJ is responsible for determining a claimant's RFC, which is the most the claimant

is able to do, considering all of the claimant's impairments and limitations.  20 C.F.R. §§

404.1546, 416.946, SSR 96-5p.  In carrying out this determination, the ALJ must consider the

record as a whole, and must explain the weighing of medical evidence and testimony.  Id.  If the

ALJ's RFC assessment is based upon the proper legal standard and is supported by substantial evidence in the record, the court should not set it aside.  Bayliss, 427 F.3d at 1217.

Based upon my review of the record and the ALJ's decision, I conclude that the ALJ here applied the proper legal standard and that his RFC assessment is supported by substantial evidence.  The ALJ reviewed and discussed the relevant medical evidence and testimony.  He discussed  Plaintiff's activities, and addressed a psychological consultative examination conducted by Nick Dietlein, Psy.D, a comprehensive neuropsychological evaluation conducted by David Freed, Ph.D., and the evaluations prepared by State Agency medical consultants.  Though the ALJ did not specifically state that he found that Plaintiff could work full time on a "regular and continuous basis," his evaluation of Plaintiff's  RFC necessarily reflected his conclusion that  Plaintiff could  perform continuous, full time work, and his discussion of the evidence fully supported the conclusion that Plaintiff could work full time.

An RFC assessment adequately sets out a claimant's restrictions if it is consistent with the limitations identified in the medical record.  Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1174 (9th Cir. 2008).  Accordingly, an RFC restricting a claimant to  "simple tasks" adequately reflects a claimant's limitations where a reviewing medical expert found that restriction appropriate and the medical evidence showed that the claimant could carry out simple instructions, maintain concentration, and sustain a routine.  Id. at 1173-74.

Unskilled work requires performance of simple duties that can be learned in a short time, and requires little or no judgment.  See 20 C.F.R. §§ 404.1568(a), 416.968(a).  In restricting Plaintiff to routine, unskilled work, the ALJ adequately accounted for any difficulties with concentration reflected in Plaintiff's  medical record.  Dr. Dietlein opined that Plaintiff could sustain concentration and attention, and the State agency consulting psychologist concluded that

FINDINGS AND RECOMMENDATION - 22

Plaintiff could perform simple one to two step commands in a workplace.  The ALJ's RFC assessment adequately reflected these medical opinions and was consistent with the medical record as a whole.

6. **Adequacy of ALJ's vocational hypothetical**

Finally, Plaintiff contends that the ALJ's conclusion that she could work as a small parts assembler and electronics worker was unsupported by the evidence because it was based upon the VE's response to a vocational hypothetical that did not reflect all of her impairments.

I disagree.  Certainly, in order to be accurate, an ALJ's hypothetical to a VE must set out all of a claimant's limitations, and a VE's opinion that a claimant can work lacks evidentiary value if the assumptions upon which the hypothetical is based are not supported by the record. E.g., Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984).  However, for the reasons set out in the discussion above, I conclude that the ALJ's hypothetical included all the limitations that were established by the record.

**Conclusion**

A judgment should be entered affirming the Commissioner's decision and dismissing this action with prejudice.

**Scheduling Order**

This Findings and Recommendation will be referred to a district judge.  Objections, if any, are due September 17, 2012.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

FINDINGS AND RECOMMENDATION - 23

If objections are filed, then a response is due within 14 days after being served with

a copy of the objections.  When the response is due or filed, whichever date is earlier, the

Findings and Recommendation will go under advisement.

DATED this 29th day of August, 2012.


     /s/ John Jelderks
John Jelderks
U.S. Magistrate Judge


FINDINGS AND RECOMMENDATION - 24